## MELCHERS v. SPRINGS.

1. A written order for goods sent to a travelling salesman, stating quality, quantity, and price, was enclosed and forwarded by him in a letter to his principals, who wrote at once to the maker of the order saying they did not have the desired brand, but could furnish another at the same price. This offer was declined. *Held,* that there was no completed contract of sale between the parties.
2. A private letter from a travelling salesman to his principals forwarding an order for goods is not a sufficient memorandum under the statute of frauds to charge the parties who received the order.

Before NORTON, J., Lancaster, March, 1890.

This was an action by Melchers & Co. against Springs, Heath & Co., commenced before a trial justice in November, 1889. The only issues involved arose out of a counter-claim interposed by defendants. The witness, Easterling, testified that on the receipt of the order he sent it to plaintiffs signed by himself as their agent, and that he considered it a sale, provided the goods were in stock. The judgment of the Circuit Court was as follows:

In this action the trial justice gave judgment against defendants for sixty two dollars, balance due plaintiffs for goods sold and delivered, and overruled defendants' counter-claim for one hundred dollars damages, by reason of plaintiffs' failure to deliver goods sold by them to defendants. Plaintiffs' salesman testifies that he received the written order for the goods, and as the agent

of plaintiffs signed his name to a written order sent to them, directing a shipment of the goods to the defendants. A memorandum in writing of the sale signed by a salesman, was, in *Louisville Asphalt Varnish Co.* v. *Lorick & Lowrance,* 29 S. C., 533, adjudged a part of the memorandum required by the statute, and in the dissenting opinion is said to be "no doubt sufficient to bind the plaintiffs," whose agent the salesman was. I think that the counter-claim is not obnoxious to the statute of frauds and perjuries. The evidence as to the damage was undisputed and competent. The defendants are entitled to their counter-claim of one hundred dollars.

It is adjudged, that the judgment of the trial justice be reversed, and that the defendants have judgment against the plaintiffs for the sum of thirty-eight dollars and all costs.

Plaintiffs appealed.

*Mr. J. T. Hay,* for appellants.

*Messrs. Jones & Williams,* contra.

July 14, 1890. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This action was brought before trial justice B. J. Witherspoon, Esq., for $62, balance due on account for goods alleged to have been sold and delivered to the defendants. The defendants made no objection to the account, which was proved, but they set up a counter-claim, alleging that the plaintiffs were indebted to them in the sum of $100, damages arising from the failure of the plaintiffs to deliver 100 barrels of flour, under an alleged contract to sell and deliver the same to the defendants. The plaintiffs denied that any such contract was ever made, evidenced as required by the statute of frauds (sec. 2020, General Statutes). The case was heard by the trial justice without a jury.

It appeared that J. R. Easterling was the travelling salesman of the plaintiffs, whose business house was in Charleston; that the defendants are located at Camden, and that J. M. Heath, a member of defendants' firm, wrote to J. R. Easterling this order:

"Oct. 4, 1888.   Mr. Easterling: We will take 100 barrels of your flour at $5.85 delivered.   (Signed)   Heath," to which was attached: "The Shiloh Valley was sold to us at $5.80 delivered, which is equal to $5.45 f. o. b.   (Signed)   S. H. & Co."   Easterling did not reply to this order, either personally or by letter, but sent the same to his house in Charleston.   There is no evidence that he had sold or bargained any flour to Springs, Heath & Co.   The plaintiffs wrote promptly in answer to the order that they could not furnish that brand of flour; and afterwards offered to send another just as good at the same price.   Springs, Heath & Co. declined to take the proposed substitute, unless plaintiffs would deduct 25 cts. per barrel.

Springs, Heath & Co. claimed that flour advanced one dollar per barrel in a day or two after this order was sent, and their counter-claim for damages is based upon the loss alleged to have been sustained by their not receiving the flour as ordered.   The trial justice dismissed the counter-claim, and gave judgment for the plaintiffs.   The defendants appealed to the Circuit Court, and Judge Norton reversed the judgment, and sustained the counter-claim to its full extent.

From Judge Norton's decree the plaintiffs appeal to this court upon the following grounds: "I. That his honor errs in holding that the alleged contract of sale, set up in the answer of the defendants, is not obnoxious to the statute of frauds and perjuries, there being no written evidence of such contract.   II. That his honor errs in holding that any contract of sale by plaintiffs to defendants, as set up in the answer of defendants, was proved by defendants, and should have held that there was no contract of sale.   III. That his honor errs in holding that the defendants are entitled to damages under their counter-claim, as attempted to be set up and proved.   IV. That his honor errs in not holding that the counter claim of defendants is not a valid legal defence, and is not sustained by undisputed and competent evidence.   V. That his honor errs in reversing the judgment of the trial justice and in allowing defendants to enter up judgment for the full amount claimed by them and all costs."

If we assume that there was a contract as alleged, it does not strike us that the evidence of damage was quite satisfactory.   It

did not appear that the purchase money was tendered or the delivery of the flour demanded. Indeed, it could not be delivered, for the reason that they (the plaintiffs) did not have the property. But the difficulty lies deeper than that. As we understand it, the alleged contract to purchase the flour was obnoxious to the statute of frauds, which requires that contracts such as that alleged here "shall not be good, except some note or memorandum in writing be made and signed by the parties to be charged," &c. This certainly relates only to the manner of proof; but, of course, it presupposes the existence of a lawful contract. Before there can be any kind of proof of a contract, such contract must have an existence. We cannot see that in this case there ever was a legal and binding contract for the sale and delivery of the flour. There is not the slightest evidence that Easterling, the travelling salesman of the plaintiffs, made a positive contract with the defendants. Easterling simply received an order, stating the quality, quantity, and price the defendants would give for the flour. The terms of the paper itself show that it was merely an offer, and accordingly Easterling did not undertake to close with the offer, but enclosed it in a letter to his house in Charleston. The contents of that letter were not intended for the defendants or ever communicated to them ; but the plaintiffs wrote immediately, informing the defendants that they could not furnish the brand of flour, and afterwards offered to send another just as good, &c. The purchase was never completed. It takes two to make a binding contract. "The minds of the parties never met." *Gary* v. *Watson*, 16 S. C., 624. The firm in Charleston certainly never accepted the offer, for they wrote, giving the most satisfactory reason why they could not do so. There is not the slightest evidence that Easterling, as the agent of the plaintiffs, closed with the offer. But suppose he intended to do so, where is the note or memorandum in writing signed by him, so as to charge his firm ? We can hardly suppose that the private letter he wrote to his house, which was not intended for the defendants or communicated to them, could possibly be considered as such "note or memorandum." The case is essentially different from that of *Louisville Company* v. *Lorick & Lowrance*, 29 S. C., 533.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that of the trial justice affirmed.